**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

Trolus Pickett (M45133),　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Plaintiff,　　　　　　)
　　　　　　　　　　　　　　　　　　)　　　Case No. 24 C 0173
　　　　　v.　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　　Hon. Mary M. Rowland
David Gomez, et al.,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　　　Defendants.　　　　　)

**MEMORANDUM OPINION AND ORDER**

State prisoner Trolus Pickett brought this *pro se* civil rights action, 42 U.S.C. § 1983, alleging that his Eighth Amendment rights were violated due to an alleged spider infestation at Stateville Correctional Center.  Now before the Court is Defendants' motion for summary judgment, Dkt. No. 84, to which Plaintiff has responded.  For the reasons stated below, the motion is denied.

**BACKGROUND**

**A. Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court.  The rule is intended "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary."  *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up).  Local Rule 56.1(a)(2) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d).  Local Rule 56.1(d)(2) requires that "[e]ach asserted fact must be supported

by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation."

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). A response may not set forth new facts or legal arguments. LR 56.1(e)(2). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

Because Plaintiff is proceeding *pro se*, Defendant served him with a Local Rule 56.2 Notice to Unrepresented Litigants Opposing Summary Judgment. (Dkt. No. 87.) Plaintiff responded by submitting a memorandum in opposition to the motion (Dkt. No. 90), a response to Defendants' factual statements (Dkt. No. 91), a document labeled "Plaintiff's Response to Defendants' Motion for Summary Judgment" (Dkt. No. 92), and a Statement of Additional Material Facts (Dkt. No. 93).

Certain of Plaintiff's purported "additional facts"—such as that an inmate had to have his leg amputated after being bitten by a brown recluse spider, or that another inmate suffered hearing loss due to a roach crawling in his ear—*see id.* at ¶¶ 2-3, are not properly supported by citation to evidence, and do not appear to be based on personal knowledge. The Court will not consider these facts. The Court will consider Plaintiff's factual statements to the extent they are supported by the record, or to the extent he could properly testify himself about the matters asserted. *See Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013). Where Plaintiff has

2

not properly disputed a fact, the Court will accept it as true. *Smith*, 321 F.3d at 683. Nonetheless, the Court is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

## B. Relevant Facts[1]

Plaintiff, Trolus Pickett, is a prisoner in the Illinois Department of Corrections now housed at Sheridan Correctional Center. (Def.'s SOF, Dkt. No. 86, at ¶ 1.) Plaintiff was in the custody of Stateville Correctional Center ("Stateville") at the relevant time and resided in the Delta ("D") House. (*Id.* at ¶ 2.) At all relevant times, Defendant David Gomez was the Warden at Stateville Correctional Center. (*Id.* at ¶ 3.) At all relevant times, Defendant Elroy Norris was a correctional lieutenant at Stateville assigned to the Delta house. (*Id.* at ¶ 4.)

Plaintiff first observed spiders at Stateville Correctional Center upon his admission in February 2015 and until being transferred in September 2024. (*Id.* at ¶ 6.) Plaintiff saw at least one spider a day, but sometimes as many as five spiders. (*Id.* at ¶ 7.) Plaintiff came across "black and brown" spiders, ranging from the size of a quarter to the size of a dime, in his cell. (*Id.* at ¶ 8.)

Early in 2021, Plaintiff spoke to Defendant Gomez about the presence of spiders in his cell and other parts of the facility, telling him that there was a "spider problem" at Stateville, and Plaintiff saw them in his cell "all the time." (*Id.* at ¶ 9; *see* Pl.'s Resp. to Defs.' SOF, Dkt. No.

---

[1] This Court has jurisdiction under 28 U.S.C. § 1331, and venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred within the Northern District of Illinois while Plaintiff was incarcerated at Stateville Correctional Center. (*See* Def.'s SOF, Dkt. No. 86, at ¶ 5.)

91, at ¶ 9.) Prior to April 5, 2021, Plaintiff did not tell Defendant Gomez that spiders were biting other individuals in custody. (*Id.* at ¶ 10; *see* Pl.'s Resp. to Defs.' SOF, Dkt. No. 91, at ¶ 10.)

When Defendant Norris conducted his first walk-through after becoming lieutenant overseeing Delta House on or about January 2021, Plaintiff complained to him about spiders in his cell and other parts of the housing unit. (*Id.* at ¶ 11.) Plaintiff states that he complained not only about the presence of spiders in the cell, but that there was an infestation. (*See* Pl.'s Resp. to Defs.' SOF, Dkt. No. 91, at ¶ 11.) Lt. Norris told Plaintiff that the housing unit was going to be sprayed for spiders by an exterminator. (Def.'s SOF, Dkt. No. 86, at ¶ 12.) Prior to April 5, 2021, Plaintiff did not discuss with Lt. Norris the risk of spiders actually biting individuals in custody. (*Id.* at ¶ 13; *see* Pl.'s Resp. to Defs.' SOF, Dkt. No. 91, at ¶ 13.)

On April 5, 2021, Plaintiff was bitten by a black spider, about the size of a dime, while he was lying down in his bunk. (*Id.* at ¶ 14.) The bite occurred in the center of Plaintiff's upper back between his shoulder blades and caused some inflammation. (*Id.* at ¶ 15.) Plaintiff received three antibacterial injections to treat the spider bite, which he testified was infected. (*Id.* at ¶ 16; *see* Pl.'s Dep., Dkt. No. 86-1, at 47:2-48:22.)

It was important for inmates to maintain clean living units because pests are drawn to unclean quarters, such as dirt collecting or crumbs of food. (*Id.* at ¶ 17.) According to Plaintiff, he cleaned up every day, but the prison workers did not clean spiderwebs off of catwalks, fences, and the corners of walls or windows. (*See* Pl.'s Resp. to Defs.' SOF, Dkt. No. 91, at ¶ 17; *see also* Pl.'s Dep., Dkt. No. 86-1, at 43:2-6; 56:1-5.)

Defendants assert that when a cell was vacated, a cleaning crew cleaned the cell prior to a new inmate occupying the cell; Plaintiff disputes this, saying that it "never occurred." (Defs.' SOF, Dkt. No. 86, at ¶ 18; Pl.'s Resp. to Defs.' SOF, Dkt. No. 91, at ¶ 18.) He cites his own

4

experience in having to clean cells each time he moved. (*See* Pl.'s SOAF, Dkt. No. 93, at ¶ 1; Pl.'s Decl., Ex. K1, Dkt. No. 93, at pg. 2.)

According to Defendants, vendors provided institutional pest control service throughout the week and would spray living units per a schedule and upon request. (Defs.' SOF, Dkt. No. 86, at ¶ 19.) Plaintiff asserts that exterminators at the prison did not start spraying pesticide on the upper galleries and inside cells upon request until 2023. (Pl.'s Resp. to Defs.' SOF, Dkt. No. 91, at ¶ 19.) Before 2023, he asserts, exterminators sprayed only along the wall in the first floor gallery. (*See* Pl.'s Decl., Ex. K5, Dkt. No. 93, at pg. 6.) Plaintiff states that he submitted numerous work orders in 2019 in an attempt to have his cell fumigated, but it did not occur until 2023, when he was living in Charlie House. (*See* Pl.'s Decl., Ex. K8, Dkt. No. 91, at pg. 60.)

Delta House was sprayed for insects on April 1, 2021, four days prior to Plaintiff's spider bite. (Defs.' SOF, Dkt. No. 86, at ¶ 20.) Plaintiff contends that the pest control records have "inconsistencies and discrepancies" but does not explain how these alleged discrepancies are relevant. (*See* Pl.'s Resp. to Defs.' SOF, Dkt. No. 91, at ¶ 20.) In any event, the extermination record on that date is not specific as to the area of Unit D that was exterminated on April 1, 2021; the record reads "Units D & E (Pipe Chase)." (*See* Dkt. No. 86-6 at pg. 7.) The procurement of pest control services was not in the control of officials at Stateville, including Defendants Norris and Gomez, because only the Chief Financial Officer of IDOC in Springfield could approve contracting services. (Defs.' SOF, Dkt. No. 86, at ¶ 21.)

## **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine when a genuine dispute of material fact exists, the Court must assess the evidence in

the record as presented in depositions, documents, affidavits or declarations, and other materials. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992).

The party seeking summary judgment bears the initial burden of showing the grounds for his motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once he has done so, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "A genuine issue of material fact exists only if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Brown v. Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The Court construes all facts in the light most favorable to the non-moving party and draws all legitimate inferences in favor of that party. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id.* However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up).

## ANALYSIS

The Eighth Amendment imposes a duty on prison officials to "'provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care.'" *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quoting *Farmer v.*

6

*Brennan*, 511 U.S. 825, 832 (1994)). Officials violate the Eighth Amendment when they exhibit deliberate indifference to a substantial risk of serious harm to an inmate. *Id.*

A deliberate indifference claim has both objective and subjective components. *Id.* A prisoner challenging conditions of confinement must show that the conditions were objectively sufficiently serious, meaning that they denied him the "minimal civilized measure of life's necessities, creating an excessive risk to inmate health and safety." *Id.* (cleaned up). The subjective component requires the prisoner prove that prison officials acted with deliberate indifference, meaning that they knew of and disregarded an excessive risk of harm to the inmate. *Id.* A jury may infer that senior prison officials are aware of systemic, as opposed to localized, conditions. *See Gray v. Hardy*, 826 F.3d 1000, 1008–09 (7th Cir. 2016) (jury could infer that warden was aware of pest infestations in facility).

Defendants argue they are entitled to summary judgment because: (1) the record, taken in the light most favorable to Plaintiff, does not show that the presence of spiders in his housing unit amounted to an objectively serious deprivation; (2) Plaintiff has failed to show that Defendants acted with deliberate indifference in light of Stateville's policies to mitigate the presence of insects; and (3) qualified immunity bars the claim.

### A.    Objectively Serious Deprivation

A prolonged pest infestation may be considered a deprivation sufficient to violate the Constitution. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). In determining whether an infestation is sufficiently serious, the Court must consider how extensive the infestation is, how long it lasted, what the infesting pests are, what odors or bites or risk of disease they create, and what particular psychological sensitivities the prisoner was known to have. *Thomas v. Illinois*, 697 F.3d 612, 614–15 (7th Cir. 2012).

Plaintiff testified that he saw spiders "every day" anywhere he went in the facility.  (*See* Pl.'s Dep., Dkt. No. 86-1, at 31:23-32:1.)  This included his cell, the dining room, the Healthcare Unit, the sick call room, the gallery, the walls, and on and under the catwalks.  (*Id.* at 32:1-5.) Plaintiff has submitted multiple declarations[2] in support of his response to the summary judgment motion.  Plaintiff asserts that he shared his cell "with spiders and roaches on a daily basis."  (Pl.'s Decl., Ex. K5, Dkt. No. 93, at pg. 6.)  He asserts that during his confinement at Stateville, from 2015 to 2024, insects were "everywhere."  He adds: "At times I would sit on my box by the bars, and just see spiders, roaches, walking on the gallery.  The ones that came under the bars to come into my cell, I would kill them.  Sometimes I would just look at the wall and think I see an insect.  It played with my head, because I saw so many insects, I was very uncomfortable and had difficult times sleeping."  (Pl.'s Decl., Ex. K4, Dkt. No. 93, at pg. 5.)

Seventh Circuit cases provide guidance as to what amounts to an objectively serious deprivation in the context of alleged insect infestations.  In *Smith v. Dart*, 803 F.3d 304, 312–13 (7th Cir. 2015), the Court found that a plaintiff's allegations of a pest infestation were insufficient to state a claim because the plaintiff had offered only a "laundry list" of pests in the jail, without alleging facts as to how extensive the infestation was or how it affected him.  In *Sain*, the Seventh Circuit held that plaintiff's allegations that he often saw cockroaches in his cell during his six-year confinement, and that he was twice bitten by a cockroach, considered in light of his acknowledgment that an exterminator regularly visited his cell, and would come in response to his complaints, did not amount to an objectively serious deprivation.  512 F.3d at 894.  In *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996), the Seventh Circuit held that an inmate's allegations that cockroaches and mice were "everywhere," crawled on his body, and

---

[2] Plaintiff has labeled these documents affidavits, but they are not notarized and are more properly considered to be declarations under 28 U.S.C. § 1746.

constantly awakened him, were sufficient to state a claim. In *Bentz v. Hardy*, 638 F. App'x 535, 537–38 (7th Cir. 2016), an unpublished case, the Seventh Circuit found that a prisoner's allegations that his cell was so infested with cockroaches and earwigs that even though he killed nearly 50 a day they continued to crawl on him at night, were sufficient to survive summary judgment.

Plaintiff's description of the spider infestation in this case falls somewhere in between the severity of those in *Sain* and *Smith* versus those in *Antonelli* and *Bentz*. Plaintiff asserts that he saw spiders every day, that they came into his cell, and that the presence of insects disturbed his sleep. These conditions persisted over a period of nine years[3] and Plaintiff contends that he was unable to have his cell fumigated until 2023. He was bitten by a spider on one occasion and developed an infection that required multiple injections to treat. Plaintiff also submitted declarations from other inmates who attested to either being bitten by spiders or observing spider infestations in their cells or the cellhouse. (*See* Dkt. No. 91 at pgs. 63, 66, 68, 69-70, 71.)

The Court finds that there is a question of fact as to whether the conditions Plaintiff describes are sufficiently serious as to amount to a constitutional deprivation. *See, e.g.*, *Williams v. Dart*, No. 19 C 4050, 2025 WL 380897, at *5 (N.D. Ill. Feb. 3, 2025) (plaintiff's testimony of "large and fat cockroaches" that came out of vents and holes in the wall and "flew around his cell at all hours" was sufficient to proceed past summary judgment); *Craddock v. Pfister*, No. 17 C 7327, 2022 WL 1499808, at *4 (N.D. Ill. May 12, 2022) (evidence of serious rodent infestation over period of years that was never properly addressed raised question of fact as to seriousness of

---

[3] Defendant Gomez was the warden for only a portion of this time, from February 2020 to February 2022. (*See* Dkt. No. 86-4 at pg. 4.) It is unclear for how much of this time Lt. Norris was assigned to Delta House, but he apparently became the lieutenant overseeing Delta House around January 2021. (*See* Defs.' SOF, Dkt. No. 86, at ¶ 11.)

conditions even though plaintiff suffered no physical injury); *Perkins v. Williams*, 15 C 6186, 2018 WL 453743, at \*6 (N.D. Ill. Jan. 17, 2018) (finding a question of fact as to whether year-long cockroach and mice infestation deprived prisoner of basic human need of sanitation where prisoner saw mice and roaches in his cell on a daily basis, even though he was not bitten).

### B. Deliberate Indifference

Defendants argue that Plaintiff cannot demonstrate deliberate indifference because his housing unit was sprayed for insects on April 1, 2025, four days prior to him suffering the spider bite. They further argue that Plaintiff placed them on notice only of the "presence of spiders," not any harmful conditions arising from their presence. Finally, they argue that Defendants cannot be liable for failure to adequately supervise extermination efforts under a theory of *respondeat superior*.

First, although Defendants have presented evidence that extermination services were regularly provided in the prison, including in Plaintiff's unit four days before the incident at issue, such evidence "does not necessarily exculpate the defendants since persisting in an ineffective method of pest control may be evidence of deliberate indifference." *Bentz v. Hardy*, 638 F. App'x 535, 537 (7th Cir. 2016) (unpublished); *see also Gray*, 826 F.3d at 1009 ("Knowingly persisting in an approach that does not make a dent in the problem is evidence from which a jury could infer deliberate indifference."); *Antonelli*, 81 F.3d at 1431 (although pest control efforts "indicate some concern" for inmate, "they do not necessarily show that defendants were less than deliberately indifferent" to unsanitary environment). Here, Plaintiff contends that exterminators at the prison did not start spraying pesticide on the upper galleries and inside cells until 2023. There are questions of fact as to the adequacy of the pest control services provided at the prison.

10

In regard to Defendants' argument that Plaintiff placed them on notice only of the "presence of spiders" and not a risk of serious harm posed by them, Plaintiff disputes this. He contends that he complained to Defendants about a spider infestation, and in regard to Warden Gomez that he pointed to the spiderwebs under the stairs and catwalks, and told the warden that they required power washing to remove. (*See* Pl.'s Dep., Dkt. No. 86-1, at 53:9-23.) Plaintiff testified that he spoke with Lt. Norris "three to four times" about the "totality of conditions," including the uncleanliness of the tier and that exterminators were not spraying on the upper galleries. (*See id.* at 61:17-62:2, 63:23-64:14.) These complaints go beyond noting the mere "presence" of spiders on the tier, and raise a question of fact as to whether Defendants were aware that the infestation posed a serious risk to inmate health.

Finally, Defendants' argument that they cannot be liable for failure to adequately supervise extermination efforts under a theory of respondeat superior is not well-taken. To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the alleged violation of a right. *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023). There is no *respondeat superior*, or supervisory, liability under § 1983; rather, a plaintiff must show that the supervisory official violated the Constitution through his own conduct. *Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015).

While Defendants argue that they cannot be liable because only the Chief Financial Officer of IDOC could approve contracting services for pest control, they cite no authority for this proposition, and the Court is not aware of any. Additionally, Lt. Norris was the primary lieutenant on Plaintiff's unit five days a week at the relevant time. (*See* Pl.'s Dep., Dkt. No. 86-1, at 57:8-23.) Plaintiff presents evidence that Lt. Norris was aware of, but turned a blind eye, to

11

an insect infestation that denied Plaintiff adequate sanitation.  This claim is not based on a theory

of *respondeat superior*.

Similarly, as to Warden Gomez, Plaintiff testified that he made both oral complaints and

a written complaint about the spider infestation.  (*See* Pl.'s Dep., Dkt. No. 86-1, at 29:10-30:21;

49:18-50:19.)  An inmate's communications to a warden can establish a basis for liability if those

communications are sufficient to put the warden on notice of an excessive risk to inmate health

or safety.  *Gray* , 826 F.3d at 1008 (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir.1996)).

Regardless, as noted above, even in the absence of these complaints, a jury could infer that the

warden was aware of pest infestations because they affect the entire facility.  *See id.* at 1008–09

(citing *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999) ("defendants such as the Sheriff

and the Director of the Jail can realistically be expected to know about or participate in creating

systematic jail conditions" such as "inadequate hygiene").

For these reasons, questions of fact exist as to whether Defendants were deliberately

indifferent to the pest infestation about which Plaintiff complains.

### C.      Qualified Immunity

"State correctional officers are immune from liability for conduct that does not violate

clearly established statutory or constitutional rights of which a reasonable person would have

known." *Smith v. Kind*, 140 F.4th 359, 369 (7th Cir. 2025) (cleaned up).  For law to be clearly

established, existing precedent must have placed the constitutional question beyond debate.  *Id.*

Although qualified immunity is an affirmative defense, a plaintiff has the burden of defeating it

once raised by defendants.  *Archer v. Chisholm*, 870 F.3d 603, 613 (7th Cir. 2017).  To do so, the

plaintiff must show: "(1) that the defendant violated a constitutional right, when construing the

facts in the light most favorable to the plaintiff, and (2) that the right was clearly established at

the time of the alleged violation, such that it would have been clear to a reasonable actor that [his] conduct was unlawful." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

Defendants frame the right in question as the right "to be free from any spiders when the prison has policies in place to mitigate the presence of spiders." (*See* Defs.' Mem. in Supp. of Mot. for Summ. J., Dkt. No. 85, at pg. 9.) But as set forth above, there are disputed questions of fact as to whether the spider infestation was sufficiently severe as to deny Plaintiff's right to adequate sanitation, and whether Defendants' policies in regard to sanitation, and particularly extermination, were sufficient in light of the allegedly years-long infestation Plaintiff describes. *See Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) ("When the qualified immunity inquiry cannot be disentangled from disputed facts, the issue cannot be resolved without a trial.").

Defendants also argue that while they arguably could be on notice of a clearly established right not to "cohabit with pests" when the inmate receives numerous bites on a regular basis, a "singular bite" in insufficient. (*See* Defs.' Reply in Supp. of Mot. for Summ. J., Dkt. No. 100, at pgs. 6-7.) The law is clearly established, however, that depending on the duration and severity of the infestation, the nature of the pests and the risks posed by them, a jury may be able to find that a prisoner was subjected to sufficient harm to support a claim of cruel and unusual punishment even in the absence of injury. *Thomas*, 697 F.3d at 614–15. For these reasons, the Court finds that Defendants are not entitled to qualified immunity.

13

## **CONCLUSION**

For all the foregoing reasons, Defendants' motion for summary judgment [84] is denied.

**DATE: March 4, 2026**

**Mary M. Rowland**
**United States District Judge**